UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MERLE PINNEY and AMANDA PINNEY,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C11-175 MJP<br><br>ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment on the contractual claims and motion for summary judgment on the extra-contractual claims (Dkt. Nos. 55 and 57.) Having reviewed the motions, the response (Dkt. No. 60), the replies (Dkt. No. 61 and 62), and all related filings, the Court GRANTS Defendants' motion for summary judgment on contractual claims and GRANTS in part and DENIES in part Defendants' motion for summary judgment on extra-contractual claims.

\\

\\

**Background**

Plaintiffs Merle Pinney and Amanda Pinney ("the Pinneys") are suing Defendant American Family Mutual Insurance Co. ("American Family") for breach of contract, bad faith, violations of the Insurance Fair Conduct Act ("IFCA") and the Washington Consumer Protection Act ("CPA").

On May 26, 2010, the Pinneys wood-pellet stove malfunctioned, causing severe smoke damage to their home and belongings. (Compl. ¶ 3.2.) The Pinneys called American Family the next day to report the loss. American Family assigned Kent Beddoe ("Beddoe") as the adjuster and Beddoe told the Pinneys about American Family's Homeowner Repair Program, which allows claimants to opt-in and use American Family's contractors to handle repairs rather than manage their own contractors. (Beddoe Decl., Dkt. No. 12, ¶ 3.)

The Pinneys decided to participate in the Homeowner Repair Program and Belfor Restoration ("Belfor") handled the repairs. (Id.) On May 28, 2010, Belfor began working on the Pinneys' home. Around mid-June 2010, Beddoe inspected the Pinneys' home to evaluate Belfor's repair estimate and evaluate complaints the Pinneys raised about the quality of Belfor's work. (Id. ¶ 6.)

In late-June 2010, Belfor removed the contents of the Pinneys' home. Some of the items were stored on-site and others were moved to the Belfor warehouse, where they were cleaned prior to being placed in Belfor's storage unit. Unsatisfied with Belfor's cleaning, the Pinneys refused to accept delivery of the items.

American Family retained an independent adjuster, Matt Pridachuk ("Pridachuk"), to evaluate the Pinneys' claim. (Dkt. No. 55-1, Ex. A.) Pridachuk determined he could not detect an odor in the stored items, but that the items should be tested because odors differ between

people. (Id., Ex. B.) American Family retained Case Forensics to test the items. (Id., Ex. C.) Case Forensics tested the items and determined there was no remaining smoke odor. (Id.) Case Forensics concluded that any smell that remained was a result of the cleaning process and would dissipate with airing and normal use. (Id.)

The Pinneys remained dissatisfied with Belfor's work and an appraisal occurred regarding the structural damage ("Structure Award") and damage to the contents ("Content Award"). The Pinneys asserted the damages amounted to $200,000. In advance of appraisal, the Pinneys were provided $6,500 in advance payments. (Dkt. No. 47, Ex. 3 & 4.) In July 2011, the appraisal panel rendered a decision. (Dkt. No. 47, Ex. 1 & 2.) For the Content Award, the panel determined the replacement cost value of damages to the home's contents was $5,865.93 and the actual cost value was $2,932.96. (Id.) American Family paid the Pinneys the difference between $6,500 and the total of the appraisal awards. (Dkt. No. 47, Ex. 5.) Upon Defendant's motion, the Court confirmed the appraisal award in December 2011. (Dkt. No. 53.)

For the Structure Award, an advisory opinion was issued estimating the replacement and actual cost value was $3,425.61. (Id.) Initially, the Structure Award was advisory pending review of the basement carpet, which was replaced but then damaged a second time during the repair process. (Id.) The basement carpet issue was re-submitted to the appraisers and, via surreply, Defendants verify it paid the appraisal amount related to the basement carpet, i.e., $6,312.28. (Dkt. No. 63, Dinning Decl. Ex. 1.)

**Analysis**

I.  Motion to Strike

Defendant requests the Court strike (1) the expert report of Gary Williams, which Plaintiffs submitted in response to Defendants' summary judgment motions (Dkt. No. 60, Ex. 5),

and (2) a note entered by non-party Jerry Martin in the American Family claim log (Dkt. No. 60, Ex. 4). The Court GRANTS Defendant's first request only.

First, Gary Williams's expert report should be stricken because it is untimely. The expert report is dated December 9, 2011 and the deadline for disclosure was October 28, 2011. (Dkt. No. 43.) In addition, the discovery cutoff was November 18, 2011. (Dkt. No. 27.) Therefore, the Court declines to consider the late-filed report.

Second, Defendant argues Plaintiffs' use of Jerry Martin's statement in the claim log is hearsay. In the claim log, Jerry Martin, an employee of Belfor, states Plaintiffs' clothes "will be guaranteed to be neutral, fresh, and properly boxed prior to storage." (Dkt. No. 60, Ex. 4.) The Court finds Defendant's objections based on hearsay fail. Jerry Martin's statement is not hearsay because it is an admission of a party-opponent. Fed. R. Evid. 801(d)(2). Even though Belfor is not a party in this action, Belfor acted as American Family's agent or servant concerning a matter within the scope of the agency or employment. Id. Since the statement of a Defendant's agent is not hearsay, the Court DENIES Defendant's request to strike the claim log.

II.     Motion for Summary Judgment

   A.  Standard

In examining Defendants' motion, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir.2000). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial.

1  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing

2  party must present significant and probative evidence to support its claim or defense. Intel Corp.

3  v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir.1991).

   B.  Contractual Claim

5     Defendant seeks summary judgment regarding Plaintiffs' contractual claim, arguing it

6  has paid the appraisers' awards. The Court agrees. There is no genuine issue of material fact--

7  the appraisers determined the amount of loss and American Family paid the awards. All

8  contractual issues have been resolved.

9     Plaintiffs nevertheless argue American Family breached its contract by (1) failing to

10 provide the Pinneys with "additional living expense" coverage and (2) failing to return the

11 damaged items to them "neutral and fresh." The Court finds both of Plaintiffs' arguments

12 unavailing. First, American family did not breach its contract by not paying for Plaintiffs'

13 "additional living expenses." The Pinneys stayed with their parents while their home was being

14 repaired and did not incur "additional living expenses," which the contract defined as "any

15 necessary increase in living expense" incurred to maintain normal living. (Dkt. No. 61-1.)

16 Further, the Pinneys have not presented American Family with any specific "additional living

17 expense" claim. To the extent the Pinneys purchased new clothes, toiletries, and beddings, those

18 costs are not "additional living expenses." Those items were covered under the Content Award.

19    Second, Plaintiffs' continued argument as to whether the items are now "neutral and

20 fresh," as promised by Belfor, is inapposite. Although Plaintiffs remain dissatisfied, an appraisal

21 occurred and an appraisal award is conclusive as to the amount of loss. See Goldstein v.

22 National Fire Ins. Co., 106 Wash. 346, 353 (1919). More specifically, the appraisers issued a

23 Content Award which was confirmed by the Court and paid by American Family. While the

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 5

appraisers' Structure Award was initially advisory, it has been finalized since filing of the initial summary judgment motion (Dkt. No. 61-3, Ex. C) and, via surreply, American Family has demonstrated that the entire Structure Award was paid, which includes damage to the basement carpet. (Dkt. No. 63, Dinning Decl. Ex. 1.) Assuming American Family's evidence is correct, this resolves the contractual issues. It is inappropriate to undermine the appraisal process when it is the appraisers who have inspected the items and are best-equipped to evaluate the loss.

The Court GRANTS Defendants' motion for summary judgment on the contractual claims. Because Defendants only submitted evidence of payment on the basement carpet via surreply, however, the Court allows Plaintiffs' ten days to file any challenge as to whether the basement carpet award has been paid.

C. Extra-Contractual Claims

Defendant argues the Pinneys' extra-contractual claims, including bad faith, CPA violations, and IFCA violations, likewise fail. The Court agrees in part.

i. Bad Faith

An insurer has a duty to act in good faith in considering property damage claims. Coventry Assoc. v. American States Ins. Co., 961 P.2d 933 (Wash. 1998). However, insurer bad faith claims still require Plaintiffs demonstrate it was harmed by the insurer's bad faith acts. Coventry Assoc, 136 Wash.2d 269, 281 (Wash. 1998).

Here, the Pinneys have not produced evidence of the harm they suffered due to American Family's bad faith claims handling. While Plaintiffs testified during depositions that the claims process was stressful, that they had to take money out of retirement, and that Merle developed an ulcer, the Pinneys submit no receipts, documents, or medical reports to support these assertions. (See Dkt. No. 60-3 at 37 (Merle Pinney Dep.)). The stress and costs the Pinneys suffered appear

1  related to the damages caused by the malfunctioning stove, i.e., having to move in with

2  parents—not American Family's bad faith in investigating the claim.

3  The only issue is whether American Family should have told the Pinneys about the

4  possibility of "additional living expense coverage."  A reasonable juror might conclude

5  Defendants acted in bad faith by failing to inform the Pinneys that the policy covered costs

6  associated with maintaining their normal standard of living, including renting a similarly-sized

7  home while their home was repaired.  While Beddoe testified in his deposition that he <u>did</u> tell the

8  Pinneys about the additional living expense coverage, there is no written documentation to that

9  effect and the Pinneys testify otherwise.  (Dkt. No. 60-2 at 71-72 (Beddoe Dep.).)  The Pinneys

10  testify that Beddoe told them Defendant would cover the expenses for a hotel room only.  (Dkt.

11  No. 60-3, at 9 (Merle Pinney Dep.))  Based on the record, a genuine issue of material fact exists

12  as to whether the Pinneys were adequately informed regarding the scope of their insurance

13  coverage.  Since the Pinneys' contributions to their in-laws' utility bills would have been

14  covered under additional living expenses, the Pinneys have demonstrated harm and the Court

15  finds Plaintiff's claim for bad faith survives summary judgment.

16  The Court GRANTS in part and DENIES in part Defendants' motion for summary

17  judgment on Plaintiffs' bad faith claim.   While Plaintiff has no bad faith claim based on

18  American Family's general claims handling, there is a genuine issue of material fact as to

19  whether Defendant adequately informed Plaintiffs about "additional living expense coverage."

20      ii.    <u>CPA</u>

21  There are five elements of a CPA claim that the Pinneys must satisfy to obtain relief.  The

22  Pinneys must show (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which

23  affects the public interest; (4) injury to plaintiff in his or her business or property; and (5) a

24

causal link between the unfair or deceptive act and the injury suffered. <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 784-85 (1986).

Here, Defendants argue the Pinneys fail to demonstrate an injury. The Court agrees in part. As discussed above, the Pinneys have not demonstrated a compensable injury other than their having had to pay utility fees to their in-laws. Emotional damages are not compensable under the CPA. <u>Ledcor Industries, Inc. v. Mutual of Enumclaw Ins. Co.</u>, 150 Wash.App. 1, 13 (2009). The Court finds Plaintiff's CPA claim survives only to the extent it relates to Defendants' failure to tell them about the additional living expense coverage. Since Plaintiff may have a claim based on Defendant's failure to explain the policy's full coverage, the Court DENIES summary judgment as to Plaintiffs' CPA claim.

    iii.    <u>IFCA</u>

IFCA provides a cause of action to a "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer. . . ." RCW 48.30.015(1). Such a person "may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs, as set forth in subsection (3) of this section." <u>Id.</u> Likewise, recovery of treble damages and attorneys' fees is permitted if the plaintiff can show either an unreasonable denial of coverage or payment or a violation of one of several enumerated WAC provisions. RCW 48.30.015(2), (3).

In Washington, there remains debate as to whether violations of the Washington Administrative Code ("WAC") alone allow for recovery of treble damages and/or attorneys' fees. Many courts have determined there still must be an unreasonable denial of coverage or payment. See <u>Travelers Indem. Co. v. Bronsink</u>, No.C08-1524JLR, 2010 WL 148366, at *2

(W.D. Wash. Jan 12, 2010); see also Lease Crutcher Lewis WA, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. C08-1862RSL, 2010 WL 4272453, at *5 (W.D. Wash. Oct. 15, 2010); Weinstein & Riley, P.S. v. Westport Ins.Corp., No C08-1694JLR, 2011 WL 887552, at *30 (W.D. Wash. Mar. 14, 2011). As the court in Lease Crutcher succinctly stated, "[a] violation of WAC 284-30-030 may justify the imposition of treble damages under RCW 48.30.015(2) and/or an award of fees and costs under RCW 48.30.015(3), but an underlying denial of coverage is still required." Id., 2010 WL 4272453, at *5.

Here, the Court follows the analysis of these courts and finds a violation of one of the enumerated WAC provisions alone is not sufficient to sustain a cause of action under IFCA. Since Defendants accepted coverage at the time the Pinneys' claim was submitted, Plaintiffs Pinneys' extensive discussion of whether American Family violated WAC provisions, i.e., failed to disclose provisions, act promptly, implement standards for prompt investigation, to conduct reasonable investigations, are inapposite. Without an unreasonable denial of coverage, IFCA claims under individual WAC violations fail. The Court GRANTS summary judgment and dismiss Plaintiffs' claims under IFCA.

D. Attorneys' Fees

Defendant also argues Olympic Steamship attorneys' fees are not applicable. The Court agrees.

In Washington, an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract. Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn.2d 37 (1991). Where the insurer does not deny coverage, but disputes the proper value of the claim, however, attorneys' fees are not warranted under Olympic Steamship. See Dayton v. Farmers Ins. Co., 124 Wash.2d 277,

280 (1994) (holding that where the insurer did not dispute coverage, but did dispute the amount owed on a policy, the plaintiff was not entitled to attorneys' fees under Olympic Steamship).

Here, it is undisputed that there was no denial of coverage. American Family accepted coverage at the time Plaintiffs' claim was submitted. The Court GRANTS Defendant's motion for summary judgment and precludes any claim for attorneys' fees under Olympic Steamship.

**Conclusion**

The Court STRIKES Plaintiff's expert report by Gary Williams as untimely and GRANTS Defendants' motion for summary judgment on the contractual claims.

On Defendants' motion for summary judgment on the extra-contractual claims, the Court GRANTS the motion in part and DENIES in part. The Court GRANTS summary judgment as to Plaintiffs' IFCA claims and Plaintiffs' request for Olympic Steamship attorneys' fees. Without an unreasonable denial of coverage, Plaintiff cannot collect under IFCA or Olympic Steamship. The Court DENIES summary judgment as to Plaintiffs' bad faith and CPA claims because a genuine issue of material fact exists as to whether American Family failed to inform the Pinneys that their policy included "additional living expense coverage."

The clerk is ordered to provide copies of this order to all counsel.

Dated this 22nd day of February, 2012.

Marsha J. Pechman
United States District Judge